V. Gautreaux *v.* W. R. Boote.

The adjudication of land sold by the Sheriff in pursuance of an order of court, rendered in the *mortuaria* of a succession, imports full legal warranty.

Obscure and ambiguous clauses in an act of sale, will be construed against the seller. C. C. 2449.

The only exception stated in Article 2535 of the Civil Code, to the rule thus laid down, that the buyer may require security to be given to him, when he has just cause to apprehend being disquieted by adverse claims, is in the case where the buyer has been informed before the sale of the danger of eviction.

The certificate of entries under which the vendor derived title having been cancelled by the Commissioners of the Land Office, under the authority of the proper department of the government; *Held :* The purchaser is entitled to security against the danger of eviction, before he can be compelled to pay the purchase money.

APPEAL from the District Court of the Parish of Ascension, *Albert Duffel,* J.

*Ilsley* for plaintiff in Injunction :

The probate proceedings in relation to the public sale of the succession of *Ursin Hebert,* imparted full legal warranty. See Arts. 2477, 2602 L. C. 7 La. 123. 2 Rob. 188.

The adjudication was of itself a complete legal title, and did not require any notarial act to strengthen it. See Arts. 2584, 2586, 2595, 2601 L. C. 11 La. 180.

And here a question of construction in relation to a clause in the notarial act of 16th February, 1850, arises, *i. e.,* whether or not the warranty, resulting from the judicial sale, was abandoned by the purchaser, *Gautreaux.*

If the clause alluded to tended in any manner to restrict or exclude the warranty, resulting from the judicial sale, it was not contemplated by the parties, and was evidently erroneous.

That the title to the property acquired at the public sale was fully guaranteed, cannot certainly be questioned. And it may reasonably be asked what possible inducement there could have been for dispensing with it? It was a vested right, and the terms stated in the *proces verbal* of adjudication corresponding with those stated in the notarial act of sale, will show conclusively that there was no valuable consideration for the release. It would therefore have been null and of no effect. See Art. 1887 L. C., and an enunciation of the same principle in the case of *Dubuch* v. *Godecheaux,* 6 Ann. 780. The administrator in answer to interrogatories, candidly admits, that prior to the signing of the notarial act there had never been, between him and *Gautreaux,* any agreement, or understanding, or even any mention about the renunciation or abandonment, by *Gautreaux,* of this vested right of warranty.

Mr. *Boote's* statement makes it clear that there was no motive or consideration for any restriction or release of the warranty, and it can hardly be supposed that *Valentin Guatreaux* intended gratuitously to abandon so important a right as *nemo presumeteur donare.*

If the clause did stipulate a restriction of warranty, and it was signed by *Gautreaux* without objection, it might be readily accounted for by the fact that he was a very ignorant man, as he signed the act with his ordinary mark, and that he did not understand the language in which it was written.

Acts like that of 16th February, 1850, are always considered as matters of form, merely to furnish evidence of what had previously occurred, to identify notes representing price, &c., &c. *Gautreaux* therefore very naturally supposed that the notarial act was to have no other effects than those stated, and did not examine the wording of it as closely as, under other circumstances, he might possibly have done.

But does the clause, after all, limit or in any manner affect the warranty due by the vendors, *i. e.,* the estate of *U. Hebert* and his widow ? Was it not rather to restrict and limit the liability of the vendors themselves, as warran-

18

GAUTREAUX
v.
BOOTE.

tors, to the part only sold by each, and not intended in any manner to curtail or impair the full legal warranty which resulted from the public sale? Each warrants his title and no more, and this is all that a vendor ever does. If there is ambiguity in the clause it must be construed against the vendor. See 2449 L. C., *Gray* v. *Lowe*, 7 Ann. 465.

But supposing, for the sake of argument, that the clause referred to really was one of non-warranty, and this is all that could possibly be pretended, still *Valentin Guatreaux* might retain the price until secured from the danger of eviction. It is not alleged, nor proved, that prior to the sale, hs was aware of the danger of eviction, and purchased at his peril and risk. See Arts. 2535, 2481 L. C. *Bowles* v. *Alfred,* 5 Ann 667. *Clague* v. *Denis,* 7 N. S. 95.

And a purchaser who would have the right to reclaim the price, after eviction, has the corresponding right to withhold it, if it is not paid, when he fears being disturbed. See the case of *Dufieff's Heirs* v. *Boykin,* not yet reported, annexed to this brief. *DeRae* v. *Chapman,* 10 Rob. 67.

We are aware that it is for us to show the danger of eviction, or grounds to fear being disquieted, and we think we have been successful in so doing.

The plantation adjudicated consists, as the answer admits, of certain entries described in plaintiff's petition, and in the diagram annexed to the depositions of Mr. *Butterfield.*

The testimony of Mr. Commissioner *Butterfield* shows that all the said entries have been cancelled and annulled by the General Land Office as illegal, null and void, *ab initio,* conflicting as they do with a confirmed and patented claim, and in violation of the Act of Congress of 3d March, 1811, the title of which is set forth in his depositions. While upon the authority of the case of *Stoddard* v. *Chambers,* 2 Howard's Rep. 317 ; *Morrison* v. *Whetstone,* 5 An. 636, and of *Barry* v. *Gambee,* 3 Howard's Rep. 51, makes the entries not voidable, but absolutely null and void. No patents ever issued on these entries, and they were therefore entirely under the control of the United States when they were cancelled. And the action of the Government thereon cannot be revised by a State court. See the cases of *Pepper* v. *Dunlap,* 9 Rob. 283. *Morancey* v. *Ford,* 2 An. 299. *Bettis* v. *Armonett,* 4 An. 364. *Haydee* v. *Nixon,* 5 An. 558. *Robertson* v. *Wood,* 5 An. 197. *McGill* v. *McGill,* 4 An. 262. *Terry* v. *Hennen,* 4 Ann. 458.

*Upton & Watson,* for *Boote,* Administrator. *Duffel,* for *Babin,* defendants and appellants :

" *Volenti non fit injuria,*"—" In whatever manner a man binds himself, he shall remain bound." Plaintiff voluntary executed a contract, on which he knew execution would issue *de plano,* he cannot complain.   6 N. S. 723.   The plaintiff took possession of the property and enjoyed the revenues thereof under the notarial title, and it is now too late to complain.   17 La. 345 ; 3 R. 147, 196.   The plaintiff is, besides bound by this notarial act, because he ratified it, and thereby confirmed it by the payment of the note due March, 1850, for it has been held, that the partial execution of a contract is as much a confirmation of it, as if the execution had been entire.   Vide 2 R. 1 ; 4 R. 127 ; 6 R. 443 ; C. C. 2252 ; Toullier, vol. 8, Nos. 510, 511, 519 and 520.

OGDEN, J.   The plaintiff became the purchaser at a public sale made by the Sheriff, of a tract of land partly belonging to the succession of *Ursin Hebert,* and partly to the widow of *Hebert,* in her own right. The land was sold in pursuance of an order of court, rendered in the *mortuaria* of the succession of *Hebert.* In the notarial act of transfer of the property to the purchaser, consequent upon the adjudication, which was signed by the administrator of the succession, and by the widow, there is the following clause relating to warranty :   "And that they do by these presents, in all their respective capacities, grant, bargain, sell, assign, transfer and set over with all lawful warranty, that they, the said *Boote* and widow *Hebert,* have and may have hereafter in their respective capacities, (*i. e.*) that the said *W. Boote* hereby sells all the rights, titles and claims, belonging to the estate of the said *Ursin Hebert,* and

the said widow *Hebert*, hereby sells all the rights, titles and claims, that she has personally, and no other warranty whatever, unto the said *Valentin Gautreaux*, here present and accepting," &c. The plaintiff enjoined an order of seizure and sale taken out by the vendors, on the mortgage notes for the price executed by *Gautreaux* in their favor, on the ground of failure of the title and danger of eviction. The only point which is presented in the argument of the appellant's counsel before this court is, that the clause in the act of sale as above set forth excluded any warranty of title, and that the buyer when threatened with eviction has no right to require security, under Art. 2535 of the Code, when there has been an exclusion of warranty. The adjudication of the property to the defendant at the probate sale imported full legal warranty. The clause in the notarial act is not a clear expression of the intention of the parties to vary the terms on which the adjudication had been made. "The seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is construed against him." Art. C. C. 2449.

But admitting it to be a correct construction of the act of sale that the vendors were to be subject to no warranty as to the validity of their title, this case cannot be distinguished in principle, from that of *Dufieff* v. *Boykin*, 9 An.

The only exception stated in Article 2535 to the rule there laid down, that the buyer may require security to be given to him when he has just cause to apprehend being disquieted by adverse claims, is the case where the buyer has been informed before the sale of the danger of eviction.

The seller is bound to restore the price in case of eviction, even where it was stipulated that there should be no warranty, unless the buyer was aware at the time of the sale of the danger, and purchased at his peril. Art. 2481.

The plaintiff did not purchase at his risk, and with knowledge of the danger of eviction. He is entitled to the relief which he has asked for if he has shown that he has just reason to apprehend eviction. It is shown by the evidence that the certificates of entries under which the vendors of the defendants derived their title to the land, have all been cancelled by the Commissioner General of the Land office, as being in conflict with a confirmed claim, and in violation of an Act of Congress of the 3d of March, 1811. As no patents had issued on these entries, the authority of the proper department of the government to order them to be cancelled has been recognized by frequent decisions. See cases of *Pepper* v. *Dunlap*, 9 Rob. 283. *Morancey* v. *Ford*, 2 An. 299. *McGill* v. *McGill*, 4 An. 262, and *Poydras* v. *Millaudon*, 9 An.

The judgment of the court below is therefore affirmed with costs.